1

2

3

4

5

# UNITED STATES DISTRICT COURT

6

## DISTRICT OF NEVADA

7

CLARK K., *et al.*,                                      )

)                2:06-CV-1068-RCJ-RJJ

8                              Plaintiffs,               )

)

9            v.                                          )                **ORDER**

)

10   KENNY C. GUINN, *et al.*,                            )

)

11                             Defendants.               )

_____ )

12

13

14      This matter comes before the Court on Defendants Michael Wilden, Fernando

Serrano, and Paula A. Hawkins' (collectively "State Defendants") Motion to Dismiss, or in

15

the Alternative, Motion for More Definite Statement (#48), Defendant Kenny Guinn's

16

Motion to Dismiss (#49), Motion for Clarification and Enlargement of Time (#65), and

17

Motion to Dismiss Plaintiffs' First Amended Complaint (#95), Plaintiffs' Motion to Certify

18

Class (#74), and Defendants Clark County Division of Family Services, Virginia Valentine,

19

Tom Morton, Louis Palma, Bruce L. Woodbury, Tom Collins, Chip Maxfield, Yvonne

20

Atkinson Gates, Myrna Williams, Lynette Boggs McDonald, Rory Reid, and Clark County's

21

(collectively "County Defendants") Motion to Dismiss, or in the Alternative, Motion for a

22

More Definite Statement.  (#104.)  After considering the Motions, the pleadings on file, and

23

oral argument on behalf of all parties, the Court issues the following Order.

24

25

**BACKGROUND**

In August 2006, Plaintiffs[1] filed suit on behalf of themselves and "all abused and neglected children who are in, or at risk of entering, the Clark County foster care system." (#57-1 at 6.)  Plaintiffs bring this civil action pursuant to 42 U.S.C. § 1983 against Kenny C. Guinn,[2] as Nevada Governor, Michael Wilden (Director of Nevada Health and Human Services), Fernando Serrano (Administrator of the Nevada Division of Child and Family Services), John Doe (Bureau Chief of the Bureau of Services for Child Care of the Division of Child and Family Services), Virginia Valentine (Clark County Manager), Clark County Department of Family Services, Tom Morton (Director of Clark County Department of Family Services), Louis Palma (Manager of Shelter Care for the Clark County Department of Family Services), County Commissioners Bruce L. Woodbury, Tom Collins, Chip Maxfield, Yvonne Atkinson Gates, Myrna Williams, Lynette Boggs McDonald, and Rory Reid, and finally Clark County itself.  Plaintiffs seek declaratory and injunctive relief relating to the operation of Nevada's and Clark County's foster care system.

In their Complaint, Plaintiffs generally allege that Defendants violated the United States Constitution, federal statutes, federal common law, and the Nevada Constitution by failing to protect both the individual Plaintiffs and the purported class.  Plaintiffs attribute this alleged systemic failure to poor management and gross over-burdening of the foster care system in Clark County.  Moreover, Plaintiffs generally allege that Defendants have failed to

---

[1] Plaintiffs proceed under fictitious names pursuant to Federal Rule of Civil Procedure 10(a).  The named Plaintiffs include Clark K. (by his next friend Sherry Anderson), Jalen, Sia, Roshaun, Caleb, and King A. (collectively the "A Plaintiffs") (by their next friend Tarrah Logan), Toni Summer and Frank B. (collectively the "B Plaintiffs") (by their next friend Marilyn Paikai), and Donna C. (by her next friend Jacquelyn Romero).

[2] Governor Guinn is no longer Nevada Governor.  This fact does not dismiss the Governor's office from this action.  When a public officer who is sued in the officer's official capacity dies, resigns, or otherwise ceases to hold office, the action does not abate and the successor is automatically substituted as Defendant.  *Hafer v. Melo*, 502 U.S. 21, 25 (1991).  Accordingly, in this Order the Court substitutes current Nevada Governor Gibbons's name for Governor Guinn.

provide effective leadership or the resources and support necessary to ensure that the foster care system provides adequate protection and services to Nevada's most vulnerable children. Finally, Plaintiffs assert that while Defendants have been aware of the alleged wrongs, as documented in a federal report submitted to then Governor Guinn, they have failed to take any remedial action.  More specifically, Plaintiffs allege horrible circumstances in the Clark County foster care system.  For example, in their Complaint, Plaintiffs highlight instances in which Plaintiffs were sexually, physically, and psychologically abused, and in at least one instance killed (one of Plaintiffs' siblings) while in foster care custody.  Moreover, the Complaint states that Plaintiffs have not received medical treatment while in foster custody.

Plaintiffs allege ten causes of action: (1) substantive due process violations under the United States Constitution; (2) substantive due process—state created danger; (3) procedural due process violations under the Fourteenth Amendment; (4) violations of the Federal Adoption Assistance and Child Welfare Act; (5) violations of the Child Abuse Prevention and Treatment Act; (6) violations of the health screening and follow up provisions in the Medicaid Act; (7) procedural due process violations under the Nevada Constitution; (8) substantive due process violations under the Nevada Constitution; (9) negligence; and (10) breach of state plans under the Social Security Act.  Plaintiffs seek injunctive and declaratory relief to halt the alleged violations and to ensure Defendants protect and provide the necessary care to foster children in Clark County.

**DISCUSSION**

Defendant Gibbons, County Defendants, and State Defendants have filed separate Motions to Dismiss based on Federal Rule of Civil Procedure 12(b)(6).  Defendants further ask the Court to dismiss Plaintiffs' claims for lack of justiciability.  The Court discusses each Motion below.

1

**I.      Justiciability**

2          Initially, the Court must resolve threshold questions regarding whether Plaintiffs'

3    claims present a justiciable case or controversy.  Specifically, the Court must decide whether

4    any of Plaintiffs' claims are moot and whether Plaintiffs lack standing to challenge the

5    allegedly illegal practices at issue before the Court.  Both Governor Gibbons and the County

6    Defendants challenge Plaintiffs' standing in this case.

7          **B.      Mootness**

8          "[A] case is moot when the issues presented are no longer 'live' or the parties lack a

9    legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496

10   (1969).  "Put another way, [a] case is moot when it no longer presents a live controversy with

11   respect to which the court can give meaningful relief." *Fla. Ass'n of Rehab. Facilities, Inc. v.*

12   *Fla. Dep't of Health & Rehabilitative Servs.*, 225 F.3d 1208, 1217 (11th Cir. 2000) (citations

13   and internal quotation marks omitted).

14         Plaintiffs seek relief for all children that have ever entered into the Clark County

15   foster care system, even if they do not currently reside in foster care.  County Defendants

16   argue the Court must dismiss all claims for Plaintiffs no longer in foster care because they are

17   no longer in the Defendants' legal or physical custody, and they therefore cannot be further

18   harmed by Defendants' alleged illegal practices.  Some courts have held that no live case or

19   controversy exists between Defendants and children not in foster care. *See, e.g., 31 Foster*

20   *Children v. Bush*, 329 F.3d 1255, 1263 (11th Cir. 2003).  However, Defendants have not

21   demonstrated that any of the named Plaintiffs are not currently in, or will not imminently

22   return to, foster custody.  Defendants also argue that the Court must dismiss as moot all

23   claims for any proposed class members not currently in foster care.  As discussed below, the

24

25                                          Page 4 of  48

1   Court defers ruling on class certification.  Accordingly, the Court defers ruling on

2   Defendants' Motion to Dismiss based on mootness.

3        **B.      Standing**

4        Under Article III, federal courts cannot entertain a litigant's claims unless that party

5   demonstrates concrete injury, satisfying the burden to demonstrate both constitutional and

6   prudential standing to sue.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Both

7   Governor Gibbons and County Defendants argue Plaintiffs lack standing to bring their

8   claims.

9              **1.      Article III Standing**

10       Plaintiffs must demonstrate three elements to constitute the "irreducible constitutional

11  minimum" of Article III standing.  *Id.* at 561.  First, Plaintiffs must have suffered an "injury-

12  in-fact" to a legally protected interest.  *Id.* at 560.  The injury must be both "concrete and

13  particularized" and "actual or imminent," as opposed to "conjectural or hypothetical."  *Id.* at

14  560 (citation omitted).  Second, there must be a causal connection between the injury and the

15  conduct complained of—the injury must be "fairly . . . trace[able] to the challenged action of

16  the defendant . . . ." *Id.*  Third, it must be likely that the injury will be "redressed by a

17  favorable decision."  *Id*. at 561 (internal quotation marks and citation omitted).

18       Plaintiffs bear the burden to establish standing.  *Bennett v. Spear*, 520 U.S. 154, 162

19  (1997).  The requisite evidence necessary to satisfy this burden depends on the stage of

20  litigation at which the standing challenge is made.  *Id.*  The Supreme Court has held that

21  where a Rule 12(b) motion to dismiss is based on lack of standing, the reviewing court must

22  defer to the plaintiff's factual allegations and "must presume that general allegations embrace

23  those specific facts that are necessary to support the claim."  *Id.*; *Lujan*, 504 U.S. at 561.

24  Thus, the Court may only dismiss Plaintiffs' claims for lack of standing if Plaintiffs have

25                        Page 5 of  48

1    failed to make "general factual allegations of injury resulting from the defendant's conduct."

2    *Lujan*, 504 U.S. at 561.

3         In order to satisfy the "injury-in-fact" requirement, a plaintiff need not wait for an

4    injury to occur.  An allegation of future injury satisfies this prong so long as the alleged injury

5    is "imminent" or "real and immediate" and not merely "conjectural" or "hypothetical."  *Id.* at

6    560; *Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983).  When a plaintiff cannot show that an

7    injury is likely to occur immediately, the plaintiff does not have standing to seek prospective

8    relief even if he has suffered a past injury.  For example, in *Lyons*, the plaintiff sought to

9    enjoin the use of "chokeholds" by police officers.  461 U.S. at 98.  The Court stated that the

10   plaintiff's standing to seek that relief hinged on "whether he was likely to suffer future injury

11   from the use of the chokeholds by police officers."  *Id.* at 105.  The Court held that the

12   plaintiff lacked standing because the probability of future injury was too speculative,

13   explaining:

14        In order to establish an actual controversy in this case, [the plaintiff] would
          have had not only to allege that he would have another encounter with the
15        police but also to make the incredible assertion either (1) that all police
          officers in Los Angeles always choke any citizen with whom they happen to
16        have an encounter . . . or (2) that the City ordered or authorized police officers
          to act in such manner.

17   *Id.* at 105-06.  As *Lyons* illustrates, future injury that depends on either the random or
18
     unauthorized acts of a third party is too speculative to satisfy standing requirements.
19
     However, when the threatened acts that may cause injury are authorized or part of a policy, it
20
     is significantly more likely that the injury will occur again.  *See id.* at 106 (stating that the
21
     plaintiff may have had standing if he had alleged "that the City ordered or authorized police
22
     officers to [perform illegal chokeholds]").
23

24

25                                    Page 6 of  48

This case is different than *Lyons*.  Plaintiffs in this case who are in foster care have standing to pursue their claims.  They are in the Defendants' custody and will be so until they are returned to their parents, are adopted, or reach the age of majority.  They cannot avoid exposure to Defendants' challenged conduct.  The alleged systemic deficiencies in the Clark County and Nevada foster care system are similar to an injurious policy and different from the random act at issue in *Lyons*. The alleged pattern and practice in this case presents a substantial likelihood that the alleged injury will occur.

Moreover, Plaintiffs' allegations support the conclusion that future injury will proceed with a high degree of immediacy.  The Supreme Court addressed this aspect of the injury-in-fact requirement in *Lujan*, holding that because the plaintiffs failed to demonstrate their injury would "proceed with a high degree of immediacy, so as to reduce the possibility of deciding a case in which no injury would have occurred at all," they lacked standing to pursue their claim.  504 U.S. at 559, 564 n.2.  Thus, under *Lujan*, one cannot merely allege that an injury will be suffered at "some time" in the future.  However, a plaintiff need not demonstrate that the injury will occur within days or even weeks to have standing.  *See, e.g., Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 211-12 (1995) (stating that a plaintiff who was likely to suffer injury within a one year period had standing to sue).

In the present case, the Plaintiffs assert detailed allegations of tangible injuries.  Plaintiffs also allege these harms will continue into the present and are very likely to persist into the future unless Defendants are forced to remedy the significant problems in Clark County's child welfare system.  Plaintiffs assert substantive harms based on alleged violations of federal and state constitutional rights, federal and state common law, and state and federal statutory rights.  Throughout their Complaint, Plaintiffs generally describe the injuries they claim to have suffered due to Defendants' allegedly illegal conduct.  At the

pleading stage in litigation and for standing purposes, the Court assumes the allegations in the Complaint are true and may only dismiss Plaintiffs' claims for lack of standing if Plaintiffs have failed to make "general factual allegations of injury resulting from the defendant's conduct." *Lujan*, 504 U.S. at 561.

In addition to injury-in-fact, Plaintiffs must also allege that their injuries are "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court," and that it is likely the injury will be redressed if the court rules in their favor. *Bennett v. Spear*, 520 U.S. 154, 167 (1997). According to the Complaint, Defendants' failures caused Plaintiffs' injuries and their continued failures are likely to cause further injuries. Therefore, for purposes of standing at the pleading stage, the alleged injuries suffered by Plaintiffs are fairly traceable to Defendants' conduct. *Lujan*, 504 U.S. at 560. In addition, Plaintiffs seek a declaratory judgment and prospective injunctive relief that will prevent Defendants from violating their constitutional and federal statutory rights. The relief Plaintiffs seek would clearly remedy their claimed injuries. Moreover, as discussed further below, federal courts have generally afforded foster children standing in situations like this case. Accordingly, Plaintiffs have sufficiently alleged constitutional standing as required by the Supreme Court at the pleading stage of litigation.

### 2.    Prudential Standing

Prudential requirements for standing include (1) whether Plaintiff's alleged injury falls within the "zone of interests" protected by the statute or constitutional provision at issue, (2) whether the Complaint amounts to generalized grievances that are more appropriately resolved by the legislative and executive branches, and (3) whether Plaintiffs assert their own

1    legal rights and interests, rather than those of third parties.  *Desert Citizens Against Pollution*

2    *v. Bisson*, 231 F.3d 1172, 1179 (9th Cir. 2000).

3         Both County Defendants and the Governor argue that Plaintiffs lack prudential

4    standing because (1) the Court should decline to intervene in the realm of domestic relations,

5    which "belongs to the laws of the States and not to the laws of the United States," *Elk Grove*

6    *Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004), and (2) those who act as Plaintiffs'

7    "next friend" in this lawsuit are improper parties.

8         First, citing *Newdow*, Defendants claim this case is nothing more than a domestic

9    relations issue, and thus the Court should find that Plaintiffs lack prudential standing.

10   However, this case is distinguishable from *Newdow* and the other cases to which Defendants

11   cite.  In *Newdow* the court held that a father lacked prudential standing to bring an action

12   challenging the constitutionality of a school district policy requiring his daughter to recite the

13   Pledge of Allegiance.  *Id.* at 14-15.  The Court reasoned that domestic relations barred federal

14   court adjudication of the federal questions in that case because "Newdow's standing

15   derive[d] entirely from his relationship with his daughter," and his "parental status [was]

16   defined by California's domestic relations law."  *Id.* at 15.  According to *Newdow*, "it is

17   improper for the federal courts to entertain a claim by a plaintiff whose standing to sue is

18   founded on family law rights that are in dispute when prosecution of the lawsuit may have an

19   adverse effect on the person who is the source of the plaintiff's claimed standing."  *Id.* at 17.

20        In *Newdow*, the father filed a suit on his own behalf, but his standing depended on

21   "family law rights that [were] in dispute"—specifically, the interpretation of a state court

22   custody order.  Determining his standing led the Court into a complex custody dispute

23   between Mr. Newdow and his ex-wife, leading the Court to "stay its hand."  Here, in stark

24   contrast to *Newdow*, Plaintiffs have filed suit on their own behalf.

25                              Page 9 of  48

1    Defendants also argue that Plaintiffs lack standing because the alleged violations are

2    more appropriately addressed by the legislative process.  However, as discussed below, many

3    courts have held that some of the provisions under which Plaintiffs filed suit create a private

4    cause of action; hence, Plaintiffs have standing as to those claims.

5    Finally, Defendants argue Plaintiffs lack standing because those who are acting as

6    their "next friends" in this case are improper parties.  A next friend must satisfy three criteria:

7    (1) the next friend must provide an adequate explanation as to why the real parties in interest

8    cannot bring the suit themselves; (2) the next friend must be dedicated to minors' best

9    interests; and (3) the next friend must have some significant relationship with the minors.

10   *Whitmore v. Ark.*, 495 U.S. 149, 163-64 (1989).  Plaintiffs satisfy all three prongs in this case.

11   First, Plaintiffs note they are minors in foster custody challenging governmental

12   action.  Plaintiffs argue that using their true identities would compel Plaintiffs to reveal

13   highly intimate information.  Some Plaintiffs have been subjected to horrid experiences,

14   including abuse.  Certainly the Court should honor their request to keep their identities

15   unknown.

16   Second, the next friends are all either family members or former foster parents.

17   Plaintiff Clark K.'s next friend is his paternal grandmother, who has expressed a desire to act

18   within Clark K.'s best interests.  The A Plaintiffs' next friend is their paternal aunt.  The A

19   Children have lived with their aunt and have expressed that she acts in their interests.  The B

20   Plaintiffs' next friend is a former foster parent.  These individuals have expressed an intent to

21   act in the children's best interest and have demonstrated they have a significant relationship

22   with the minors.  Accordingly, they meet the three criteria set out by the Supreme Court.  *See*

23   *id.*  Therefore, Plaintiffs have prudential standing to file this action.

24

25                                    Page 10 of  48

### 3.     Children Not Currently in Foster Custody

Plaintiffs also argue that children in the proposed class who are not currently in custody, but that have been or could be subject to the foster care system, also have standing. Defendants argue, however, that any Plaintiffs who are not in the foster care custody lack standing to pursue the constitutional claims in this action. *See 31 Foster Children v. Bush*, 329 F.3d 1255, 1267 (11th Cir. 2003).  As discussed below, the Court defers ruling on Plaintiffs' Motion for Class Certification until the parties have an opportunity to conduct additional discovery regarding the proposed class.  Thus, the Court does not rule at this time whether any proposed class members not currently in custody lack prudential standing.

## II.     County Defendants' Motion to Dismiss

In addition to challenging standing, County Defendants ask the Court to dismiss Plaintiffs' Complaint because Plaintiffs have failed to state a claim.  Specifically, County Defendants argue that Plaintiffs have failed to state valid claims against the Department of Family Services ("DFS") because DFS lacks capacity to be sued.  County Defendants further contend that the Court should dismiss all claims against Clark County Commissioners and that Plaintiffs have not asserted valid federal claims.  County Defendants also argue they are immune from liability and that the Court should abstain from hearing this case.

### A.     Rule 12(b)(6) Standard

Under Rule 12(b)(6), a court may dismiss a claim if the plaintiffs "fail to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Dismissal for failure to state a claim under Rule 12(b)(6) is proper only if the plaintiff can prove no set of facts in support of the claim that would entitle her to relief.  *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1149 (9th Cir. 2000).  The review is limited to the complaint, and all allegations of material fact are taken as true and viewed in the light most favorable to the plaintiff.  *In re*

1   *Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996).  Although courts assume the

2   factual allegations to be true, courts should not "assume the truth of legal conclusions merely

3   because they are cast in the form of factual allegations."  *W. Mining Council v. Watt*, 643

4   F.2d 618, 624 (9th Cir. 1981).  On a motion to dismiss, a court "presumes that general

5   allegations embrace those specific facts that are necessary to support the claim."  *Lujan v.*

6   *Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990).

### B.      DFS Lacks Capacity to be Sued

8       Plaintiffs' Complaint lists both Clark County and the DFS as parties to this action.

9   County Defendants argue that DFS cannot be sued under Nevada law.  Under Nevada law, a

10  plaintiff may sue a political subdivision but not a department of a political subdivision.  Nev.

11  Rev. Stat. § 41.031(1)-(2).  DFS is a political subdivision department, and thus Plaintiffs may

12  not maintain a suit against it.  In their Opposition, Plaintiffs consent to dismissing DFS from

13  this case.  The Court grants Defendants' request to dismiss DFS from this action.

### C.      Request to Dismiss Individually-Named County Commissioners

15      Plaintiffs have named both Clark County and the County Commissioners in their suit.

16  County Defendants ask the Court to dismiss the individually-named Commissioners because

17  they are not proper parties.  Defendants cite to Nev. Rev. Stat. § 12.105 to support their

18  argument.  However, § 12.105 merely states that Plaintiffs may sue the political subdivision

19  without naming the individual commissioner.  The Ninth Circuit has stated that a decision to

20  name both the individual and the political division may be duplicative, but it is not fatal.

21  *Clements v. Airport Auth.*, 69 F.3d 321, 336 n.20 (9th Cir. 1995).  Courts have allowed

22  plaintiffs to name both the individual defendants in their official capacities and the agency

23  when the plaintiffs allege the officials acted beyond their statutory powers or, even though

24  within the scope of authority, the powers themselves or the manner in which they are

25                          Page 12 of  48

1   exercised are constitutionally void.  *See, e.g., People of Cal. ex rel. Ervin*, 170 F. Supp. 2d

2   1040, 1045-46 (E.D. Cal. 2001) (citing *Malone v. Bowdoin*, 369 U.S. 643, 647 (1962)).  In

3   this case, Plaintiffs allege that the individually-named Defendants have taken actions that

4   violate the Constitution.  Thus, while the Court may in its discretion dismiss the individual

5   Defendants from this case, it refrains from so doing at this stage of the litigation.  If at the

6   summary judgment stage or after conducting discovery the individual Defendants can

7   demonstrate they took no part in the alleged violations, then the Court may consider

8   dismissing them from this suit.

9         **D.**    **Plaintiffs' 1983 Federal Statutory Claims**

10        Defendants also argue Plaintiffs cannot maintain a § 1983 action for the alleged

11   federal violations in this case.  Plaintiffs bring their statutory claims pursuant to 42 U.S.C

12   § 1983, which imposes liability on anyone who, under color of state law, deprives a person

13   "of any rights, privileges, or immunities secured by the Constitution and laws."  *Blessing v.*

14   *Freestone*, 520 U.S. 329, 340 (1997).  Section 1983 safeguards certain rights conferred by

15   federal statutes. *Id.* (citation omitted).  However, to seek redress under § 1983, Plaintiffs

16   "must assert the violation of a federal right, not merely a violation of federal law." *Id.*

17   (citation omitted).  Courts examine three factors to determine whether a particular statutory

18   provision gives rise to a federal right:

19

20         First, Congress must have intended that the provision in question benefit the plaintiff.  Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement

21         would strain judicial competence.  Third, the statute must unambiguously impose a binding obligation on the States.  In other words, the provision

22         giving rise to the asserted right must be couched in mandatory rather than precatory terms.

23

24

25                                  Page 13 of  48

*Id.* (citations omitted).  With this framework in mind, the Court considers Plaintiffs' federal statutory claims in turn.  No court within the Ninth Circuit has considered whether a private individual may bring a cause of action under these statutes.  The Supreme Court has held that one specific provision under the Adoption Assistance Act did not afford a private right of action.  Congress subsequently amended the statute to provide a private right of action under that particular provision, but chose not to amend the remaining statutory provisions. [3]

### 1.    Federal Adoption Assistance Act

Plaintiffs allege that under the federal Adoption Assistance and Child Welfare Act ("AACA") of 1980, as amended by the Adoption and Safe Families Act of 1997, Nevada must (1) submit a child-welfare plan approved by the United States Department of Health and

[3] *Suter v. Artist M.*, 503 U.S. 347 (1992).  The *Suter* Court noted that the pertinent inquiry under the *Blessing* framework was whether Congress, in enacting the Adoption Act, unambiguously conferred "upon the child beneficiaries of the Act a right to enforce the requirement that the State make 'reasonable efforts' to prevent a child from being removed from his home, and once removed to reunify the child with his family." *Suter*, 503 U.S. at 357. The *Suter* Court found that § 671(a)(15) did not unambiguously confer an enforceable right on individual children within the child welfare system because only "a rather generalized duty" was imposed upon the state, "to be enforced not by private individuals, but by the Secretary" in the manner set forth in the AACA. *Id.* at 363.  To the extent that *Suter* may have intimated that § 671(a)(15), or any other section of the AACA for that matter, did not confer a private right enforceable under        § 1983 simply because of its inclusion in a section requiring a State plan or specifying the required contents of such a plan, Congress amended the Social Security Act in 1994, specifically mentioning *Suter*. This amendment noted the following:

 . . . in an action brought to enforce a provision of this chapter, such provision is not to be deemed unenforceable because of its inclusion in a section of this chapter requiring a State plan or specifying the required contents of a State plan. This section is not intended to limit or expand grounds for determining the availability of private actions to enforce State plan requirements other than by overturning any such grounds applied in *Suter v. Artist M.*, 503 U.S. 347 (1992), but not applied in prior Supreme Court decisions respecting such enforceability; provided however, that this section is not intended to alter the holding in *Suter v. Artist M.* that section 671(a)(15) of this title is not enforceable in a private right of action.

42 U.S.C. § 1320a-2. However, this amendment did not overrule *Suter*. The amendment only forecloses the refusal to find a federal right enforceable under § 1983 because the statutory provision may be included in a section requiring a State plan or specifying the required contents of such a plan. *See Harris v. James*, 127 F.3d 993, 1002 (11th Cir. 1997) (noting that 42 U.S.C. § 1320a-2 "does not purport to reject any and all grounds relied upon in *Suter*; it purports only to overrule certain grounds–i.e., that a provision is unenforceable simply because of its inclusion in a section requiring a state plan or specifying the contents of such a plan"). Therefore, with this guideline in mind, the Court examines Plaintiffs' asserted rights to determine, as noted in *Suter*, if the provision at issue unambiguously confers a private right enforceable pursuant to § 1983.

Human Services, (2) certify that the plan provides the child welfare services required by the AACA, and (3) comply with the terms of the Nevada plan.  Plaintiffs argue Defendants have violated specific statutory provisions they claim create rights sufficient to maintain a § 1983 action.

<strong>a.      42 U.S.C. § 671(a)(10): Right to Placement in Foster Homes<br>. . . that Conform to National Standards</strong>

Plaintiffs allege that the AACA requires Defendants to ensure that foster family homes and child care institutions are licensed, relicensed, and operated in conformity with appropriate "national standards" to accept federal funds.  In this regard, Plaintiffs allege that Defendants' actions and inactions have deprived Plaintiffs of their right to placement in foster homes or facilities that conform to "nationally recommended professional standards."  In their Motion to Dismiss, Defendants argue § 671(a)(10) is too vague under the *Blessing* analysis mentioned above.

42 U.S.C. § 671(a)(10) provides in relevant part:

> . . . in order for a State to be eligible for payments under [42 U.S.C. § 670], it shall have a plan approved by the Secretary which -- provides for the establishment or designation of a State authority . . . which shall be responsible for establishing and maintaining standards for foster family homes and child care institutions which are reasonably in accord with recommended standards of national organizations concerned with standards for such institutions or homes, including standards related to admission policies, safety, sanitation, and protection of civil rights, and provides that the standards so established shall be applied by the State to any foster family home or child care institution receiving funds under this part or part B of this subchapter.

42 U.S.C. § 671(a)(10).  Plaintiffs' alleged right to "placement in foster homes or facilities that conform to nationally recommended professional standards" based upon 42 U.S.C. § 671(a)(10) is too vague and amorphous under *Blessing* to be enforced pursuant § 1983.  First, the very provision Plaintiffs cite in support of their claim "to placement in

Page 15 of  48

foster homes or facilities that conform to nationally recommended professional standards"

has been rejected as the basis for a private right enforceable under § 1983 by numerous

courts. *See, e.g., Yvonne L. v. N.M. Dep't of Human Serv.*, 959 F.2d 883, 889, 890 (10th Cir.

1992) (stating "the language of § 671(a)(10) by itself does not support . . . a cause of action

[for a right to care in a foster home with standards reasonably in accord with those of national

organizations]. It only references 'standards of national organizations concerned with

standards or such institutions or [foster] homes.' That is the type of vague and amorphous

language . . . that cannot be judicially enforced") (citations omitted); *Charlie H. v. Whitman*,

83 F. Supp. 2d 476, 490-92 (D. N.J. 2000) (same). Courts have also held that "§ 671(a)(10)

fails to unambiguously confer upon plaintiffs a private right of enforcement under this

provision" because "the language of this section does not confer upon plaintiffs a 'right' to

foster homes or institutions which are in accord with recommended standards of national

organizations but clearly states that the state plan must provide for the designation of a state

authority or authorities which shall establish and maintain such standards." *Baby Neal v.*

*Casey*, 821 F. Supp. 320, 326-327 (E.D. Pa. 1993). Moreover, courts have held that the

'reasonably in accord' language is too vague and ambiguous to maintain a private right of

action. *See Doe v. Johnson*, No. 92 C 7661, 1993 WL 50845, at *3 (N.D. Ill. Feb. 24, 1993)

(dismissing plaintiff's action "to the extent that it seeks private relief for an alleged violation

of § 671(a) of the Adoption Assistance and Child Welfare Act" because "the Act places its

enforcement mechanism in hands other than those of private plaintiffs under § 1983"); *see*

*also Del A. v. Roemer*, 777 F. Supp. 1297, 1310 (E.D. La. 1991) (holding that the "provision

requiring placement in foster homes and institutions that are 'reasonably in accord with'

national standards is vague and unenforceable"). Moreover, as discussed above in footnote

three, that Congress recently chose to amend 42 U.S.C. § 674 to include a private right of

1    action under § 1983 for a state or other entity's failure to comply with 42 U.S.C.

2    § 671(a)(18), but did not include the other various elements enumerated in 42 U.S.C.

3    § 671(a) and relied upon by Plaintiffs, is strong evidence that Congress did not intend

4    § 671(a)(10) to confer rights enforceable pursuant to § 1983.  Pursuant to the above analysis,

5    the Court dismisses Plaintiffs' § 1983 claim under 42 U.S.C. § 671(a)(10) for "placement in

6    foster homes or facilities that conform to nationally recommended professional standards."

7           **b.      42 U.S.C. § 671(a)(22): The Right to Quality Services that**
                     **Protect Children's Health & Safety**

8

9           Plaintiffs assert that § 671(a)(22) establishes "a right to quality services that protect

10   foster children's safety and health."  (#57-7 at 8.)  Section 671(a)(22) provides in relevant

11   part that "the State shall develop and implement standards to ensure that children in foster

12   care placements in public or private agencies are provided quality services that protect the

13   safety and health of the children."  § 671(a)(22).  This language clearly intends to benefit

14   foster children; thus, it satisfies *Blessing*'s first prong.  However, the language is too "vague

15   and amorphous" to support a private cause of action.  *See, e.g., Whitley v. N.M. Children,*

16   *Youth & Families Dep't*, 184 F. Supp. 2d 1146, 1165 (D. N.M. 2001); *Charlie H.*, 83 F.

17   Supp. 2d at 490 n.3.  The language in this section is similar to the language in § 671(a)(10),

18   which more than one federal circuit and various district courts have held too ambiguous.

19   Moreover, as discussed above in footnote three, that Congress recently chose to amend 42

20   U.S.C. § 674 to include a private right of action under § 1983 for a state or other entity's

21   failure to comply with 42 U.S.C. § 671(a)(18), but did not include the other various elements

22   enumerated in 42 U.S.C. § 671(a) is strong evidence that Congress did not intend

23   § 671(a)(22) to confer rights enforceable pursuant to § 1983.  The Court dismisses Plaintiffs'

24   § 1983 claim under 42 U.S.C. § 671(a)(22).

25                                        Page 17 of  48

c.    **42 U.S.C. §§ 671(a)(16), 675(1), and 675(5)(B): Right to Timely Written Case Plans**

Section 671(a)(16) requires states "to provide for the development of a case plan (as defined in section 475(1) [42 USCS § 675(1)]) for each child receiving foster care maintenance payments under the State plan and provide for a case review system which meets the requirements described in section 475(5)(B) [42 USCS § 675(5)(B)] with respect to each such child . . . ."  42 U.S.C. § 675(1) defines the requirements for a "case plan" and § 675(5) defines the requirements for a "case review system."  42 U.S.C. §§ 675(1) and (5). Unlike the above analyzed sections, the case-plan provisions provide specific detailed instructions.  The federal courts that have analyzed these sections are split on whether they provide a private right of action.

In analyzing whether §§ 675(5)(C) and 671(a)(16) provide a private right of action, the Court must look to *Blessing*.  First, it is clear that Plaintiffs are the intentional beneficiaries under these provisions.  Second, the terms of these two provisions are not so "vague and amorphous" that their enforcement would strain judicial competence.  Unlike the "reasonable efforts," "national standards," and "safe" language analyzed above, the requirements needed to form a case plan are fairly specific in that a judge can determine whether a state plan contains such a system.  Indeed, many courts have held that most provisions under the AACA fail to provide a private right of action, yet these same courts have also held that § 671(a)(16) affords foster children a private cause of action.  *See, e.g., B.H. v. Johnson*, 715 F. Supp. 1387, 1405 (N.D. Ill. 1989).  Finally, § 671 of the Act unambiguously imposes a binding obligation on the states if they accept federal funds.  Thus, it is clear that Congress intended to impose a requirement on states that would specifically benefit foster care children such as Plaintiffs.  *See Ocean v. Kearney*, 123 F. Supp. 2d 618,

1    625 (D. Fla. 2000) (analyzing § 671(a)(16) and concluding that it provides a private cause of

2    action).  The Court therefore denies Defendants' request to dismiss Plaintiffs' federal claims

3    under these sections.

4        **d.    42 U.S.C. §§ 622(b)(10)(B)(ii), and 675(5)(A): Right to Placement in the Least Restrictive, Most Family-Like Setting**

5

6        Plaintiffs allege Defendants must ensure that each child in need of a foster care

7    placement is placed in the least restrictive, most family-like setting available, consistent with

8    the child's best interests and individual needs.  In this regard, Plaintiffs allege that

9    Defendants' actions and inactions deprived them of the right to "placement in the least

10    restrictive, most family-like setting."  Because 42 U.S.C. § 675(5) is a definitional section,

11    standing alone, it does not confer a right upon Plaintiffs enforceable pursuant to § 1983.  *See*

12    *B.H. v. Johnson*, 715 F. Supp. 1387, 1401 (N.D. Ill. 1989) (noting that "it would be strange

13    for Congress to create enforceable rights solely in the definitional section of a statute").  Most

14    courts deciding this issue have held that this section does not create a private right of action.

15    *See, e.g., id.* (holding that while the AACA "creates an enforceable right to an individualized

16    'case plan' and 'case review system, . . . beyond the narrow requirements of a case plan and

17    case review system, the AA[C]A does not impose on the state the sweeping duties alleged by

18    plaintiffs" and specifically holding that "we do not believe Congress intended to create an

19    enforceable individual right of placement in the least restrictive (most family-like) setting").

20    Moreover, several courts have rejected similar claims under § 1983 to enforce the right to

21    placement in the least restrictive, most family-like setting because such a right is too vague

22    and amorphous to be judicially enforceable.  *See Pennhurst State Sch. and Hosp. v.*

23    *Halderman*, 451 U.S. 1, 24-25 (1981) (holding that "it is difficult to know what is meant by

24    providing 'appropriate treatment' in the 'least restrictive' setting"); *Aristotle P. v. Johnson*,

25        Page 19 of  48

1    721 F. Supp. 1002, 1012 (N.D. Ill. 1989) (holding that the "right to be placed 'in the least

2    restrictive, most family like setting' . . . [is] amorphous and not subject to precise definition")

3    (citing *Pennhurst*, 451 U.S. at 24-25).  The Court dismisses Plaintiffs' § 1983 claim under 42

4    U.S.C. § 622(b)(10)(B)(ii) and/or 42 U.S.C. § 675(5) to placement in the least restrictive,

5    most family-like setting.

6              **e.**    **42 U.S.C. §§ 675(5)(D) and 622(b)(10)(B)(ii): Right to
     Health and Educational Records Reviewed**

7

8           In connection with the case-review system described above, Plaintiffs ask this Court

     to recognize a right to updated health and educational records for Plaintiff foster children.

9    Specifically, the statutes state in pertinent part:

10

11       . . . a child's health and education record (as described in paragraph (1)(A)) is
     reviewed and updated, and a copy of the record is supplied to the foster parent

12   or foster care provider with whom the child is placed, at the time of each
     placement of the child in foster care, and is supplied to the child at no cost at

13   the time the child leaves foster care if the child is leaving foster care by reason
     of having attained the age of majority under State law . . . .

14          As analyzed above, the AACA provides a private right of action with regards to

15   Plaintiffs' timely written case plans.  Plaintiffs now ask the Court to recognize a cause of

16   action for this specific provision under the case plan.  First, it is clear that Plaintiffs are an

17   intentional beneficiary under these provisions, which require a case review system including

18   various procedural safeguards for each child in custody.  Second, the terms of these health-

19   and-educational-records provisions are not so "vague and amorphous" that their enforcement

20   would strain judicial competence.  Unlike the "reasonable efforts," "national standards," and

21   "safe" language above, the statute specifically states what records should be forwarded along

22   with the foster child.  Thus, the Court denies County Defendants' Motion to Dismiss as it

23   relates to this claim.

24

25                               Page 20 of  48

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

###### f.     42 U.S.C. § 675(5)(G): Foster Parent's Right to Notice of Hearing

The statute states that a case-review system must include a procedure for ensuring that "the foster parents (if any) of a child and any preadoptive parent or relative providing care for the child are provided with notice of, and a right to be heard in, any proceeding to be held with respect to the child . . . ."  § 675(5)(G).  This language satisfies the *Blessing* test.  First, the foster child is clearly the intended beneficiary under this section.  Second, the right protected by the statute is neither vague nor amorphous.  The statute's plain language unambiguously states that any foster parent or preadoptive parent providing care for the child must receive notice of a hearing and have the right to be heard.  The states must comply with this provision to receive federal funding.  The Court therefore denies County Defendants' Motion to Dismiss based on this cause of action.

###### g.     "All Other Rights"

Plaintiffs also ask the Court to recognize all other rights under 42 U.S.C. §§ 622(b)(10)(B)(ii) and 675(5).  However, as noted above, determining whether Plaintiffs' have a private cause of action requires the Court to analyze Plaintiffs' specific allegations and each specific statute to consider if Congress has provided Plaintiff a private right of action. Plaintiffs have not stated how "all other rights" applies to the asserted wrongs.  Therefore, the Court dismisses this claim with leave to amend.

##### 2.     Child Abuse Prevention and Treatment Act

Plaintiffs allege Defendants violated their right to a guardian *ad litem* in all proceedings before a juvenile court in violation of the Child Abuse Prevention and Treatment Act ("CAPTA").  42 U.S.C. § 5106a(b)(2)(A)(xiii).  The relevant statutory provision states in part:

. . . that in every case involving an abused or neglected child which results in a judicial proceeding, a guardian ad litem, who has received training appropriate to the role, and who may be an attorney or a court appointed special advocate who has received training appropriate to that role (or both), shall be appointed to represent the child in such proceedings . . . .

42 U.S.C. § 5106a(b)(2)(A)(xiii).

As to *Blessing*'s first prong, the language clearly indicates that Plaintiffs (foster children) are the intended beneficiaries of the CAPTA provisions at issue. Moreover, the statutory language requires that "in every case" the state must provide a guardian *ad litem*. The statute sets forth clear conditions the state must satisfy to qualify for a federal grant and does so through the use of mandatory and not precatory language. Further, the CAPTA provision at issue is not so vague and amorphous as to be beyond the enforcement power of the Court. This Court certainly is competent to determine whether Defendants have made any efforts to comply with this provision. While Defendants may very well prevail on this claim at trial or at summary judgment, Plaintiffs have stated a valid claim for the purposes of surviving Defendants' Motion to Dismiss.

### 3.    Medicaid Act

Plaintiffs also claim Defendants have "failed to provide Medicaid-eligible children with the full range of services covered by Medicaid when such services are deemed necessary . . . ." (#57-8 at 1.) Plaintiffs allege this failure violates 42 U.S.C. §§ 1396a(a)(10), 1396d(a)(4)(B), and 1396d(r).

### a.    42 U.S.C. § 1396(a)(10)

The Ninth Circuit has never analyzed whether this statute provides a private right of action. Plaintiffs argue this section requires Plaintiffs to provide medical services. However, there appears to be some disagreement among the courts of appeal as to whether, pursuant to the Medicaid Act, a state must merely provide financial assistance to eligible individuals to

1   enable them to obtain covered services, or provide the services directly.  *See Sabree v.*

2   *Richman*, 367 F.3d 180, 181 n.1 (3d Cir. 2004); *Bruggeman v. Blagojevich*, 324 F.3d 906,

3   910 (7th Cir. 2003) ("[T]he statutory reference to 'assistance' appears to have reference to

4   *financial* assistance rather than to actual medical *services*, though the distinction was missed

5   in *Bryson v. Shumway*, 308 F.3d 79, 81, 88-89 (1st Cir. 2002), and *Doe v. Chiles*, 136 F.3d

6   709, 714, 717 (11th Cir. 1998).").  The Medicaid Act explicitly defines the term "medical

7   assistance" as used in § 1396a(a)(10):  "payment of part or all of the cost of the [enumerated]

8   services" to eligible individuals "who are under the age of 21."  42 U.S.C. § 1396d(a); *Schott*

9   *v. Olszewski*, 401 F.3d 682, 686 (6th Cir. 2005) ("The Act defines 'medical assistance' as

10   'payment of part or all of the cost of the [covered] care and services . . . for individuals.'").

11   Plaintiffs nevertheless contend that the language of §1396a(a)(10) expands the definition of

12   "medical assistance" beyond simply payment for services to include actual provision of

13   services.  In their Complaint, Plaintiffs argue that Defendants have "failed to provide . . . the

14   full range of services covered by Medicaid . . . ."  (#57-8 at 1.)  Plaintiffs continually allege

15   that Defendants have failed to provide services, not financial assistance, as required under the

16   statute.  After examining the text and the structure of the statute, the Sixth Circuit held that

17   1396a(a)(10) did not require the State to provide medical services directly.  *Westside Mothers*

18   *v. Olszewski*, 454 F.3d 532, 541 (6th Cir. 2006).  According to the Sixth Circuit's recent

19   decision (the most recent on this statute), "[t]he most reasonable interpretation of

20   § 1396a(a)(10) is that medical assistance, i.e., financial assistance, must be provided for at

21   least the care and services listed in paragraphs (1) through (5), (17) and (21) of § 1396d(a)."

22   *Id.* citing (*Clark v. Richman*, 339 F. Supp. 2d 631, 641 (M.D. Pa. 2004)).

23       Because Defendants have filed a Motion to Dismiss for failure to state a claim, the

24   Court must concern itself with the allegations in Plaintiffs' Complaint, which do not allege

25                        Page 23 of  48

that Defendants have failed to provide financial assistance as required by § 1396a(10).

Rather, Plaintiffs contend Defendants have failed to provide the actual services.  The Court

therefore dismisses with leave to amend the claim for violations of § 1396a(a)(10).

### b.        42 U.S.C. § 1396a(4)(B)[4]

As noted above, the Ninth Circuit has not interpreted the statutes at issue in this case.

However, it has analyzed another provision of § 1396a.  *Sanchez v. Johnson*, 416 F.3d 1051

(9th Cir. 2005).  In *Sanchez*, the Ninth Circuit stated:

> Although 42 U.S.C. § 1396a(a) sets out a comprehensive list of requirements
> that a state plan must meet, it does not describe every requirement in the same
> language.  Some requirements, such as those addressed in *Sabree*, focus on
> individual recipients, while others are concerned with the procedural
> administration of the Medicaid Act by the States and only refer to recipients, if
> at all, in the aggregate. Section 30(A) is one of the latter provisions; it is
> directly concerned with the State as administrator and only indirectly with
> recipients and providers as beneficiaries of the administered services.
> *Gonzaga* made it clear that simply being the intended beneficiary of a statute
> is not enough to demonstrate the intentional creation of an enforceable right.

*Id.* at 1062.  The Court then went on to hold that the statute failed the *Blessing* test.  The

language at issue in § 1396a(4)(B) is similar to that which the Ninth Circuit analyzed in

*Sanchez*.  Just as with the language at issue in *Sanchez*, Section 1396a(4)(B) focuses not on

the individual recipient of Medicaid; rather, it focuses on "the procedural administration of

the Medicaid Act . . . ."  *Id.*  Accordingly, the Court dismisses Plaintiffs' claims under 42

U.S.C. § 1396a(4)(B).  Further, the Court dismisses Plaintiffs' remaining Medicaid claims

because they necessarily flow from these dismissed claims.

---

[4]42 U.S.C. § 1396a(4)(B) states that a state plan must provide "for the training and effective use
of paid subprofessional staff, with particular emphasis on the full-time or part-time employment
of recipients and other persons of low income, as community service aides, in the administration
of the plan and for the use of nonpaid or partially paid volunteers in a social service volunteer
program in providing services to applicants and recipients and in assisting any advisory
committees established by the State agency . . . ."

Page 24 of  48

E.      **Plaintiffs' Federal Constitutional Claims**

Plaintiffs also allege three constitutional causes of action.  First, Plaintiffs allege Defendants have deprived them of their substantive due process rights under the Fourteenth Amendment.  Second, Plaintiffs argue Defendants have violated their rights by systematically creating dangers that deprive them of their substantive due process rights (state-created danger).  Finally, Plaintiffs contend that Defendants have violated their procedural due process rights.

1.      **Substantive Due Process**

Plaintiffs argue that Defendants have deprived them of the following rights:

> . . . the right to protection for unnecessary harm while in government custody; the right to a living environment that protects foster children's physical, mental, and emotional safety and well-being; the right to services necessary to prevent foster children from deteriorating or being harmed physically, developmentally, psychologically, or otherwise while in government custody, including but not limited to the right to safe and secure foster care placements, appropriate monitoring and supervision, appropriate planning and services directed to toward ensu[r]ing that the child can leave foster care and grow up in a permanent family, adequate mental, dental, psychiatric, psychological, and educational services; the right to treatment and care consistent with the purpose of the assumption of custody by Defendants; the right not to be retained in custody longer than is necessary to accomplish the purposes to be served by taking the child into custody; the right to be placed in the least restrictive placement based on the foster child's needs; and the right to receive care, treatment, and services determined and provided through the exercise of accepted, reasonable professional judgment.

(#57 at 60.)

Initially, with respect to foster children in custody, the Court must draw a distinction between those children involuntarily within state custody and those voluntarily within state custody, if such a distinction exists among Plaintiffs.  *DeShaney v. Winnebago County Dep't of Social Serv.*, 489 U.S. 189, 201 (1989) (holding that "in the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his

1   own behalf—through incarceration, institutionalization, or other similar restraint of personal

2   liberty—which is the 'deprivation of liberty' triggering the protections of the Due Process

3   Clause, not its failure to act to protect his liberty interest against harms by other means"). *See*

4   *also Milburn v. Anne Arundel County Dep't of Social Serv.*, 871 F.2d 474, 476 (4th Cir.

5   1989) (noting that "the State of Maryland by the affirmative exercise of its power had not

6   restrained the plaintiff's liberty; he was voluntarily placed in the foster home by his natural

7   parents"). Plaintiffs do not clearly state in their Complaint whether Plaintiffs are children in

8   state custody voluntarily. However, the Court grants Defendants' Motion to Dismiss with

9   respect to the First Count of Plaintiffs' Complaint to the extent Plaintiffs' allege a substantive

10  due process claim on behalf of children voluntarily in state custody. *See id.*

11        With respect to Plaintiffs involuntarily in foster custody, courts have held that

12  children "who have been involuntarily placed in the custody of [the state] may state a claim

13  for violation of their substantive due process rights based upon their right to freedom from

14  harm under the fourteenth amendment of the United States Constitution." *See, e.g., Baby*

15  *Neal v. Casey*, 821 F. Supp. 320, 335 (E.D. Pa. 1993). In addition, Courts have also held that

16  foster children have a right to the required "professional judgment" while in custody. *See,*

17  *e.g., Wendy H. v. Philadelphia*, 849 F. Supp. 367, 372 (E.D. Pa. 1994). Defendants' alleged

18  conduct of ignoring warnings and reports of abuse prior to and during the placement process

19  could constitute a failure to adhere to the "professional judgment" standard. *Jordan v.*

20  *Philadelphia*, 66 F. Supp. 2d 638, 646 (E.D. Pa. 1999). However, this right to freedom from

21  harm is not without boundaries. Specifically, under the Fourteenth Amendment, Nevada is

22  required to provide to individuals within state custody their "basic human needs," such as

23  "food, clothing, shelter, medical care, and reasonable safety." *DeShaney*, 489 U.S. at 200

24  (citations omitted). Plaintiffs do not, however, have a substantive due process right to "not

Page 26 of  48

be retained in custody longer than is necessary . . . ," nor do Plaintiffs have a substantive due process right "to be placed in the least restrictive placement based on the foster child's needs." *See Baby Neal*, 821 F. Supp. at 335 (dismissing plaintiffs' claims for "permanent placements or placement in preadoptive homes pending their adoption"); *see also Charlie H. Whitman*, 83 F. Supp. 2d 476, 507 (D. N.J. 2000) (holding that foster children do not have a due process right to be free from unlimited custody or to be placed in the least restrictive housing possible).  Therefore, the Court grants Defendants' Motion to Dismiss with respect to count one to the extent Plaintiffs assert a substantive due process claim on behalf of children involuntarily in state custody to "not be retained in custody longer than is necessary. . . ," or to "to be placed in the least restrictive placement based on the foster child's needs."

## 2.    Substantive Due Process: State-Created Danger

Plaintiffs have not sufficiently stated a claim for state-created danger in their Complaint.  "The state-created danger doctrine requires more than a mere failure to act; it requires the state official to take an affirmative action." *Kennedy v. Ridgefield City*, 440 F.3d 1091, 1094 (9th Cir. 2006).  "Second, the plaintiff must prove that the official's act did more than simply expose the plaintiff to a danger that already existed." *Id.* (citations omitted). Finally, the plaintiff must prove that the official acted with deliberate indifference to known or obvious dangers.  *See L.W. v. Grubbs*, 92 F.3d 894, 900 (9th Cir. 1996) ("The plaintiff must show that the state official participated in creating a dangerous condition, and acted with deliberate indifference to the known or obvious danger in subjecting the plaintiff to it."). The Supreme Court has stated that negligence, whether gross or simple, is insufficient to prove a constitutional violation.  *See Daniels v. Williams*, 474 U.S. 327, 328 (1986) ("The Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property.").

1    While Plaintiffs have alleged that Defendants affirmatively acted with deliberate

2    indifference by placing Plaintiffs in situations Defendants knew or should have known posed

3    an imminent risk, Plaintiffs have failed to allege the second element necessary to sufficiently

4    plead an action for state-created danger.  Specifically, Plaintiffs argue that Defendants placed

5    foster children into situations that they knew were already dangerous.  However, Plaintiff

6    must allege and "prove that the official's act did more than simply expose the plaintiff to a

7    danger that already existed." *Kennedy*, 440 F.3d at 1094.  Plaintiffs have not alleged that

8    Defendants did anything more than place foster children into an already broken system.

9    Plaintiffs' Complaint does not state that Defendants created or increased the danger to

10   children, just that they failed to correct it.  Thus, the Court grants Defendants' Motion to

11   Dismiss as it relates to Plaintiffs' second cause of action, with leave to amend.

12                    **3.       Procedural Due Process**

13          Although some courts have held that foster children cannot state a claim for

14   procedural due process violations because the state juvenile court and administrative

15   procedures provide sufficient due process, Defendants failed to brief this issue.  Plaintiffs

16   allege Defendants failed to provide those procedures.  In other words, Plaintiffs contend that

17   Defendants systematically ignore the statutorily-created procedures.  Thus, at the pleading

18   stage, Plaintiffs have sufficiently stated a claim for which the Court may grant relief.

19                    **F.       Federal Common-Law Claim (Count Ten)**

20          Plaintiffs' allege they are third-party beneficiaries to the "State Plan" contract

21   between Nevada and the federal government.  Pursuant to the AACA and federal common

22   law, Plaintiffs assert a cause of action for violation of their rights under that contract.  While

23   Defendants ask the Court to dismiss this claim, they provide no argument as to why the Court

24   must do so.

25                              Page 28 of  48

1    The Supreme Court has held that legislation enacted pursuant to the spending power

2    of Congress is much in the nature of a contract: "in return for federal funds, the States agree

3    to comply with federally imposed conditions." *Pennhurst State Sch. & Hosp. v. Halderman*,

4    451 U.S. 1, 17 (1981).  It is also recognized that, under certain circumstances, parties can be

5    third-party beneficiaries to contracts between the federal government and local or state

6    agencies.  *See, e.g., Concerned Tenants Ass'n of Father Panik Village v. Pierce*, 685 F. Supp.

7    316, 324 (D. Conn. 1988) (stating that tenants have enforceable rights as intended

8    beneficiaries to obtain compliance with obligations under contract between HUD and local

9    agency).

10    Although it is true that the United States is a party, through its Department of Health

11    and Human Services, to the alleged contract at issue, the United States is not a party to this

12    action.  The Complaint raises no question regarding the liability of the United States or the

13    responsibilities of the United States under the alleged contract.  In determining whether

14    Plaintiffs are intended third-party beneficiaries of the alleged contract in this case, the Court

15    must first decide whether federal or state common law applies.  *See Miree v. DeKalb County*,

16    433 U.S. 25, 28 (1977) (holding that state law applied to petitioners' breach-of-contract claim

17    as third-party beneficiaries); *see also Dewakuku v. Cuomo*, 107 F. Supp. 2d 1117, 1131 (D.

18    Ariz. 2000) (stating that federal common law applies to third-party beneficiary claims when a

19    federal agency is a party to the action and the outcome may directly affect financial

20    obligations of the United States).

21    The "contract" between the parties is not before the Court. Therefore, the full scope of

22    the United States' interests is not clear for purposes of making the threshold determination of

23    whether federal or state common law applies.  In any event, the Court cannot determine the

24    rights of the parties to a contract that is not in the record.  Further, Defendants have failed to

25

argue why the Court should dismiss this claim.  Therefore, the Court denies Defendants'
Motion to Dismiss as it relates to Plaintiffs' tenth cause of action, without prejudice to the
filing of a motion for summary judgment addressing these issues.

### G.    Immunity From Federal Claims

Defendants argue they are immune from Plaintiffs' federal claims.  While Nevada has
not waived its Eleventh Amendment immunity, under the *Ex Parte Young* doctrine, the
Eleventh Amendment permits official capacity suits against state officials for injunctive
relief.  *Duke Energy Trading and Mktg., L.L.C. v. Davis*, 267 F.3d 1042, 1051 (9th Cir. 2001)
(citing *Ex Parte Young*, 209 U.S. 123, 159-60 (1908)).  In their Motion to Dismiss, County
Defendants incorrectly argue they are immune from suit based on qualified and absolute
immunity doctrines that are applicable in individual capacity lawsuits.  However, Plaintiffs
file this suit against County Defendants in their official capacities.  Plaintiffs' Complaint
contains numerous allegations that County Defendants are directly connected to the
enforcement of the acts in question.  Accordingly, the Court finds that County Defendants are
not immune from Plaintiffs' suit seeking prospective injunctive relief.

### H.    Immunity From State Claims

County Defendants ask the Court to dismiss all state claims against them due to
immunity.  Under Nev. Rev. Stat. § 41.032(2), County Defendants are only immune from
liability for their discretionary acts and omissions, not ministerial acts.  Section 41.032
provides, in pertinent part:

> . . . No action may be brought under NRS 41.031 [(the State's limited waiver
> of immunity)] or against an immune contractor or an officer or employee of
> the state or any of its agencies or political subdivisions which is:
> . . . .
>
> 2. Based upon the exercise or performance or the failure to exercise or
> perform a discretionary function or duty on the part of the state or any of its

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

> agencies or political subdivisions or of any officer, employee or immune
> contractor of any of these, whether or not the discretion involved is abused.

Nev. Rev. Stat. § 41.032.  The Nevada Supreme Court has defined discretionary acts as

"those which require the exercise of personal deliberation, decision and judgment."

*Travelers Hotel v. Reno*, 741 P.2d 1353, 1354 (Nev. 1987).

   In *Foster v. Washoe County*, the Nevada Supreme Court held that an investigation

into alleged child abuse "involves 'personal deliberation, decision and judgment' and cannot

be construed as ministerial." 964 P.2d 788, 794 (Nev. 1998).  County Defendants argue that

in accordance with *Foster*, "plaintiffs' claims against the Individual Clark County Defendants

should be dismissed as the alleged violations of plaintiffs' rights . . . are based upon

discretionary acts protected under NRS 41.032." (#104 at 14.)  Plaintiffs argue that County

Defendants have violated numerous statutory provisions.  To determine whether they involve

discretionary or ministerial duties, the Court briefly examines the alleged statutory violations

in Plaintiffs' state law claims.

### 1.    Seventh Cause of Action

   Plaintiffs' seventh cause of action alleges procedural due process violations under the

Nevada Constitution for failure to enforce several statutes.  County Defendants argue they are

immune from liability under these statutes based on *Foster*.  However, in *Foster* the Court

held that the manner in which the defendants conducted their investigation was discretionary;

the court did not hold that the decision to initiate an investigation in the first place was

discretionary.  As analyzed below, all but one statute in question imposes ministerial duties

upon County Defendants.  However, just as in *Foster*, the manner in which County

Defendants perform the ministerial duties is discretionary.  Therefore, the Court dismisses all

claims based on how County Defendants carried out their ministerial duties, but the Court

does not dismiss Plaintiffs' seventh cause of action as it relates to County Defendants' failure to initiate the ministerial duties in the first place.  Plaintiffs allege Defendants violated, and continue to violate, the following statutes:

(1)     Nev. Rev. Stat. §§ 432B.500 and 432B.505: (appointment of Guardian *ad litem*.).

(2)     Nev. Rev. Stat. § 432B.260: (discretionary as it relates to children five years or younger.)  Therefore, the Court dismisses Plaintiffs' seventh cause of action with regards to this statute for children over five years.

(3)     Nev. Admin. Code §§ 424.160 & 424.805: (imposing ministerial duties upon County Defendants in relation to number of children allowed in foster homes)

(4)     Nev. Admin. Code §§ 432B.405 & 424.565: (stating that the agencies in question shall ensure that . . . . ).

(5)     Nev. Admin. Code §§ 432B.185: (stating that the "agency which provides child welfare services shall assess the safety of a child who is the subject of a report made pursuant to NRS 432B.220 or an investigation initiated pursuant to NRS 432B.260 at each phase of intervention in which child welfare services are provided. Those phases include, without limitation: . . . .).

(6)     Nev. Rev. Stat. §§ 432A.040; 432A.070; 432A.210; and Nev. Admin. Code §§ 432A.170; 432A.180: (imposing mandatory duty to ensure that child care facilities are licensed prior to placement of children).

(7)     Nev. Admin. Code § 432B.340: (requiring residential institutions be responsible to provide the necessary resources to prevent harm to children).

(8)     Nev. Admin. Code § 424,530: (listing examples of unacceptable disciplinary techniques).

(9)     Nev. Rev. Stat. § 127.330: (imposing mandatory notice requirements upon Nevada agencies before they can send a child in foster custody to another state).

These statutory provisions relate to mandatory, ministerial duties.[5]  However, the Court dismisses all claims based on how County Defendants carried out their ministerial duties because the Nevada Supreme Court has held that such behavior requires discretionary acts, but the Court does not dismiss Plaintiffs' seventh cause of action as it relates to County Defendants' failure to initiate the ministerial duties in the first place.

### 2.     Remaining State law Claims

Plaintiffs' remaining state law claims—counts eight and nine—follow the same analysis as count seven.  Plaintiffs may maintain claims against Plaintiffs inasmuch as they claim County Defendants failed to even initiate the relevant statutory requirements, but Plaintiffs cannot maintain an action based on the manner in which Defendants carried out their duties because those decisions involve "'personal deliberation, decision and judgment' and cannot be construed as ministerial." *Foster v. Washoe County* 964 P.2d 788, 794 (Nev. 1998).  Accordingly, Defendants are immune from liability for those discretionary decisions.

### I.     *Younger* Abstention

County Defendants also argue that even if Plaintiffs have standing, the Court should refrain from exercising federal jurisdiction as required in *Younger v. Harris*, 401 U.S. 37 (1971).  "Absent 'extraordinary circumstances,' abstention in favor of state judicial proceedings is required if the state proceedings (1) are ongoing, (2) implicate important state interests, and (3) provide the plaintiff an adequate opportunity to litigate federal claims."

---

[5]Except Nev. Rev. Stat. § 432B.260 as it relates to children over five years.  The Court dismisses this cause of action with regards to this statutory section inasmuch as Plaintiffs allege a violation for children over five years.

1   *Hirsh v. Justices of Supreme Court of Cal.*, 67 F.3d 708, 712 (9th Cir. 1995) (citation

2   omitted).  The abstention doctrine is "an extraordinary and narrow exception to the duty of a

3   District Court to adjudicate a controversy properly before it."  *Colo. River Water*

4   *Conservation Dist. v. United States,* 424 U.S. 800, 813 (1976) (citation omitted).

5          In this case, there is no dispute that Plaintiffs and the members of the class they seek

6   to represent are involved in ongoing deprivation proceedings in the juvenile court.  Nor is

7   there any dispute that these proceedings implicate important state interests in the care,

8   disposition, and welfare of deprived children.  Therefore, to determine whether to abstain, the

9   Court considers whether these proceedings will interfere with the ongoing state proceedings

10  and whether the state proceedings afford Plaintiffs an adequate opportunity to raise their

11  federal claims.  At this time, the Court defers ruling on abstention.

12         Plaintiffs have periodic reviews before the state juvenile courts.  Plaintiffs claim that

13  the declaratory and injunctive relief they seek is not directed at the state review hearings, or at

14  Nevada's juvenile courts, juvenile court judges, or juvenile court personnel.  According to

15  Plaintiffs, they seek relief directed solely at executive branch and County Defendants to

16  remedy their alleged failures as Plaintiffs' custodians.  If Plaintiffs' claims are proven, an

17  order by this Court remedying such failures might not interfere with ongoing juvenile court

18  proceedings.  However, at this time, the Court cannot conclude the ongoing juvenile court

19  proceedings do not afford Plaintiffs an adequate opportunity to raise their federal claims.

20  Plaintiffs seek prospective injunctive relief on behalf of themselves and others to remedy

21  ongoing violations of their rights.

22         Defendants claim the juvenile courts lack jurisdiction to afford the requested relief.

23  Nevada's juvenile court system "is the creation of statute, and it only possesses the

24  jurisdiction expressly provided for it in the statute."  *Kell v. State*, 618 P.2d 350, 351 (Nev.

25                                          Page 34 of  48

1980).  Juvenile court jurisdiction is limited to "any matter within the purview of this title."
Nev. Rev. Stat. § 62B.310(1).  Accordingly, juvenile court jurisdiction is limited to making
determinations regarding individual children who are in "need of protection" as set forth in
Nev. Rev. Stat. § 432B.410.  Although juvenile court judges are authorized to make a variety
of decisions to protect abused and neglected children, they are not authorized to make
determinations regarding system-wide violations of the civil rights of plaintiff children or
issue orders concerning the systemic reform of Clark County's child welfare system.  As
mentioned above, Plaintiffs' cases are currently pending in the juvenile system.  The Court
cannot make a determination at this time if the juvenile court system has failed to afford
Plaintiffs the relief they request.  Plaintiffs have recently initiated their claims in state courts.
The state courts may very well remedy Plaintiffs' circumstances.  Thus, the Court defers
ruling on abstention as it relates to the argument that the juvenile courts cannot remedy the
alleged violations at issue in Plaintiffs' case.  The Court will reevaluate abstention on these
grounds after the juvenile courts have sufficient time to address Plaintiffs' cases.  Further,
because the Court defers ruling on Plaintiffs' Motion for Class Certification, it does not
address whether the juvenile court system lacks jurisdiction to address the alleged system-
wide deficiencies with the foster care system.  When the Court later addresses the Motion for
Class Certification, it will again readdress the abstention argument.

Defendants also argue the Court should follow *31 Foster Children v. Bush,* 329 F.3d
1255 (11th Cir. 2003) and abstain from hearing this case.  This case, however, is
distinguishable from *31 Foster Children*.  The relief requested in *31 Foster Children* went far
beyond what is sought here.  Plaintiffs in *31 Foster Children* sought "to have the district
court appoint a panel and give it authority to implement a system wide plan to revamp and
reform dependency proceedings in Florida, as well as the appointment of a permanent

Page 35 of  48

1   children's advocate to oversee that plan." *Id.* at 1279.   Plaintiffs request no such relief in

2   this case.  Also, in *31 Foster Children,* the court of appeals noted that "the federal and state

3   courts could well differ, issuing conflicting orders about what is best for a particular plaintiff,

4   such as whether a particular placement is safe or appropriate or whether sufficient efforts are

5   being made to find an adoptive family." *Id.* at 1278.  In this case, however, Plaintiffs do not

6   ask the Court to make individualized determinations with respect to particular foster children.

7   Instead, they seek declaratory and injunctive relief on a system-wide basis.  Certainly, if

8   Plaintiffs modify their requested relief and ask this Court to overtake the foster care system or

9   to act as a de facto supervisor, this Court should abstain.  However, at this time, based on the

10  above analysis, the Court does not abstain from exercising federal jurisdiction in regards to

11  Defendants' reliance on *31 Foster Children*.

12  **III.    Governor Gibbons's Motion to Dismiss**

13          Governor Gibbons moves the Court to dismiss Plaintiffs' Complaint because (1)

14  Plaintiffs lack standing, (2) Eleventh Amendment immunity as to the federal claims, and (3)

15  Plaintiffs have failed to state valid claims or otherwise establish a sufficient causal

16  connection between the Governor and the alleged wrongs.

17          **A.    Standing**

18          Pursuant to the standing analysis above, the Court finds that Plaintiffs have standing

19  to bring their action.  Thus, the Court denies the Governor's Motion with regards to standing.

20          **B.    Immunity and Plaintiffs' Federal Claims**

21          The Governor argues he is immune from Plaintiffs' federal claims.  While Nevada has

22  not waived its Eleventh Amendment immunity, under the *Ex Parte Young* doctrine, the

23  Eleventh Amendment permits official capacity suits against state officials for injunctive

24  relief.  *Duke Energy Trading and Mktg., L.L.C. v. Davis*, 267 F.3d 1042, 1051 (9th Cir. 2001)

25                              Page 36 of  48

1     (citing *Ex Parte Young*, 209 U.S. 123, 159-60 (1908)).  However, under the *Ex Parte Young*

2     exception, "the state official sued 'must have some connection *with the enforcement of the*

3     *act*' to avoid making that official a mere representative of the state."  *Culinary Workers*

4     *Union, Local 226 v. Del Papa*, 200 F.3d 614, 619 (9th Cir. 1999) (quoting *Ex Parte Young*,

5     209 U.S. at 157) (emphasis added).  This connection "must be fairly direct; a generalized

6     duty to enforce state law or general supervisory power over those persons responsible for

7     enforcing the challenged provision will not subject an official to suit."  *L.A. County Bar*

8     *Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992) (citations omitted).

9          Defendant Governor does not dispute that the *Ex Parte Young* doctrine allows a

10     plaintiff to sue a state official in his official capacity for prospective injunctive relief; rather,

11     Defendant Governor argues that *Ex Parte Young* does not apply in this case because he does

12     not have the requisite "connection with the enforcement of the act."  *Id.*  Plaintiffs argue that

13     Governor Gibbons has the requisite enforcement connection based on several federal statutes.

14     First, Plaintiffs argue that 42 U.S.C. § 5106a(b)(2)(A) creates the necessary connection

15     between the Governor and federal statutes in question.  42 U.S.C. § 5106a(b)(2)(A) states in

16     relevant part that to receive federal funds under the federal child abuse statutory provisions,

17     Nevada must submit a plan to the federal government wherein the Governor provides "an

18     assurance in the form of a certification by the chief executive officer of the State that the

19     State has in effect and is enforcing a State law, *or* has in effect and is operating a Statewide

20     program, relating to child abuse and neglect that includes--. . . ."  § 5106a(b)(2)(A) (emphasis

21     added).  The statute then lists numerous requirements that a state foster care program must

22     have to receive federal funding.  However, this statute does not state that the Governor is

23     connected to the implementation, enforcement, funding, or running of any foster care

24     program.  This statute simply requires the Governor to acknowledge that the state has such a

25                      Page 37 of  48

program if the state wants federal funding.  The statute does not create any enforcement

rights in the Governor.  To impose an injunction on the Governor to fix Nevada's foster care

system based on this statute would have no real practical effect.

Second, Plaintiffs point to Nev. Rev. Stat. § 422.260.  However, just as with

§ 5106a(b)(2)(A), § 422.260 does not impose upon or otherwise create any enforcement

authority in the Governor of the relevant statutes at issue in this case.  Section 422.260

simply states that Nevada will accept federal funds from the federal government, with the

governor's approval.  Finally, Plaintiffs state that Nev. Rev. Stat. § 232.210 creates the

requisite connection between the Governor and the enforcement provisions at issue in this

case.  However, § 232.210 simply outlines the requirement for the Director of the Department

of Health and Human Services and states that the director "serves at the pleasure of the

governor."

The statues upon which Plaintiffs sue the Governor in his official capacity for

injunctive relief do not satisfy the requirement that "the state official sued 'must have some

connection with the enforcement of the act' to avoid making that official a mere

representative of the state."  *Culinary Workers Union, Local 226 v. Del Papa*, 200 F.3d 614,

619 (9th Cir. 1999) (quoting *Ex Parte Young*, 209 U.S. at 157).  Indeed, the Nevada

legislature has explicitly placed the enforcement obligations at issue in this case upon other

individuals.  *See, e.g.,* Nev. Rev. Stat. § 232.353 (stating that the Director of Health and

Human Services has the obligation to adopt and enforce "each state plan required by the

Federal Government, either directly or as a condition to the receipt of federal money, for the

administration of any program for which the Department or any of the appropriate divisions

of the Department is responsible"); *see also* Nev. Rev. Stat. § 432B.180 (stating that the

1    Division of Child and Family Services shall plan and monitor child welfare services

2    throughout the state); Nev. Rev. Stat. § 432A.040.

3          Plaintiffs do note that the Nevada Constitution obligates the Governor to enforce and

4    uphold Nevada law.  However, a constitutional requirement to see that the laws of the state

5    are faithfully executed is insufficient to create *Ex Parte Young* liability.  *L.A. Branch NAACP*

6    *v. L.A. Unified Sch. Dist.*, 714 F.2d 946, 953 (9th Cir. 1983).  Further, Plaintiffs not only seek

7    an injunction preventing the Governor from enforcing or continuing unconstitutional

8    practices, they hope to require the Governor to take affirmative steps to eliminate the effects

9    of the allegedly illegal conduct in this case.  However, the Governor's powers in this area are

10   limited to making general policy and budgetary recommendations, as well as administrative

11   appointments.  Thus, "the purpose of joining the Governor as a defendant in this suit is not to

12   remedy the effects of unconstitutional [practices] . . . , but to use the Governor as a surrogate

13   for the state, and thereby evade the state's Eleventh Amendment immunity."  *Id.*  Plaintiffs

14   also appear to assert that the Governor is connected to the alleged violations because he is a

15   supervisor.  However, as noted above, general supervisory power over those persons

16   responsible for enforcing the challenged provision will not subject an official to suit."  *L.A.*

17   *County Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992) (citations omitted).  Further,

18   Plaintiffs have not presented any evidence that the Governor actively participated in the

19   alleged wrongful actions.

20         As analyzed above, the Governor's general duties in this case do not establish the

21   requisite connection between him and the unconstitutional acts that Plaintiffs allege.  Thus,

22   the Court dismisses Plaintiffs' federal claims against Governor Gibbons.

23

24

25                                    Page 39 of  48

1          **C.      Plaintiffs' State Claims (Counts Seven and Eight)**

2                  Plaintiffs allege Nevada constitutional substantive and procedural due process

3       violations in counts seven and eight.  To support their claims, Plaintiffs cite to numerous

4       statutory provisions.  However, the statutes to which they cite do not apply to the Governor.

5       For example, Plaintiffs argue the Governor failed to appoint a guardian ad litem.  However,

6       the Nevada judiciary has the sole authority to appoint a guardian ad litem.  The remaining

7       statutes listed in subsections (b) through (e) of paragraph 286 in Plaintiffs' Complaint refer

8       solely to the DFS.  Of the statutes listed in subsections (f) through (i) of paragraph 286, only

9       one statute, NRS 432A.070, refers to the Governor.  However, this statute merely references

10      the Governor in stating that the DFS Chief must submit a budgetary report to the Governor.

11      This statute cannot help Plaintiffs state a claim against Defendant Governor Gibbons for a

12      violation of procedural due process under the Nevada Constitution.  Defendant Governor has

13      never had legal or physical custody over Plaintiffs.  Further, the Governor does not have

14      control over the agencies that have Plaintiffs in custody, nor does he control over any facility

15      where the alleged class members have been housed, and the Governor lacks the authority or

16      ability under Nevada statutes to affect where or how long Plaintiffs have been housed or what

17      treatment and services they receive.  Accordingly, the Court dismisses counts seven and eight

18      as they relate to Governor Gibbons.

19         **D.      Count Nine**

20                  Governor Gibbons asks the Court to dismiss count nine as it applies to him.  Plaintiffs

21      have not named the Governor in this count.  Thus, to the extent they allege liability toward

22      the Governor, the Court dismisses count nine as to Governor Gibbons.

23

24

25                                  Page 40 of  48

1       Pursuant to the above analysis, the Court dismisses Governor Gibbons from this

2   action.  The Governor is immune to Plaintiffs' federal claims, and Plaintiffs have failed to

3   state a valid state claim against Governor Gibbons.

4   **IV.**   **State Defendants' Motion to Dismiss**

5       State Defendants ask the Court to dismiss Plaintiffs' claims because Plaintiffs have

6   failed to state valid claims, immunity, and because Plaintiffs have not alleged a sufficient

7   connection between State Defendants and the alleged wrongs to support a § 1983 action.

8       **A.**   **Section 1983 Claims**

9       State Defendants argue the Court must dismiss them from this action because

10  Plaintiffs have not alleged sufficient connections between State Defendants and the alleged

11  wrongs to support a § 1983 action.  "To sustain an action under section 1983, a plaintiff must

12  show (1) that the conduct complained of was committed by a person acting under color of

13  state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory

14  right."  *Wood v. Ostrander*, 879 F.2d 583, 587 (9th Cir. 1989).

15      There is no question Plaintiffs have alleged Defendants were acting under the color of

16  Nevada law when they engaged in the alleged unconstitutional conduct. Defendants argue,

17  instead, that their conduct did not cause Plaintiffs any deprivation of their constitutional or

18  statutory rights.

19      "A person 'subjects' another to the deprivation of a constitutional right, within the

20  meaning of [§ ] 1983, if [that person] does an affirmative act, participates in another's

21  affirmative acts, or omits to perform an act which [that person] is legally required to do that

22  causes the deprivation of which complaint is made."  *Johnson v. Duffy*, 588 F.2d 740, 743

23  (9th Cir. 1978).  In limited circumstances, a person can also be subject to § 1983 liability for

24  the acts of others.  "Although there is no pure *respondeat superior* liability under § 1983, a

25                                Page 41 of  48

1   supervisor is liable for the constitutional violations of subordinates 'if the supervisor

2   participated in or directed the violations, or knew of the violations and failed to act to prevent

3   them.'" *Hydrick v. Hunter*, 466 F.3d 676, 689 (9th Cir. 2006) (quoting *Taylor v. List*, 880

4   F.2d 1040, 1045 (9th Cir. 1989)).

5          Plaintiffs proceed on a theory that Defendants created policies and procedures that

6   violated Plaintiffs' constitutional rights and that Defendants were willfully blind to

7   constitutional violations committed by their subordinates.  While Defendants argue they have

8   no custodial control over the foster children in Clark County, Plaintiffs have alleged

9   sufficient facts at the pleading stage to support their claim.  For example, Plaintiffs allege that

10  Defendant Wilden oversees and supervises the Division of Child and Family Services.  *See*

11  Nev. Rev. Stat. § 232.200.  Plaintiffs also argue that State Defendant Serrano has a statutory

12  duty to "[p]lan, coordinate and monitor the delivery of child welfare services provided

13  throughout the state . . . ." § 432B.180(2).  Plaintiffs also allege that State Defendant

14  Hawkins (now Doe) reviews and approves all child care facilities, licenses such facilities, and

15  actively participates in monitoring licensed facilities.  Unlike with Governor Gibbons,

16  Plaintiffs have cited specific statutory provisions that create direct supervisory control over

17  subordinates actively involved in the foster care system.  On a Motion to Dismiss, the Court

18  "presumes that general allegations embrace those specific facts that are necessary to support

19  the claim." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990).  Of course State

20  Defendants may file a motion for summary judgment after discovery has been initiated if they

21  believe Plaintiffs have failed to demonstrate material issues of fact to support their claims.

22         **B.      Failure to State a Claim and Immunity**

23         The Court analyzes these arguments in agreement with the analysis above under

24  County Defendants' Motion to Dismiss.

25                                    Page 42 of  48

1    In sum, in regards to State Defendants' motion to Dismiss, the Court dismisses all

2    claims as analyzed in County Defendants' Motion to Dismiss.  However, the Court does not

3    dismiss all remaining § 1983 claims because Plaintiffs have sufficiently alleged their claims.

4    **V.      Plaintiffs' Motion for Class Certification**

5    As noted above, Plaintiffs seek to represent a county-wide class consisting of all

6    children "who have been, are, or will be victims in the legal custody of Clark County

7    Department of Family Services." (#74 at 4.)  Plaintiffs claim the only realistic means for

8    redressing the injuries suffered by the thousands of children who are members of the class is

9    to prosecute this matter as a class action.  According to Plaintiffs, reliance upon any one class

10   member's claims will not effectively remedy the class-wide issues raised in this suit.

11   Plaintiffs seek to prosecute their suit as a class action pursuant to Federal Rule of

12   Civil Procedure 23.  Plaintiffs bear the burden of demonstrating they meet Rule 23's

13   requirements.  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001)

14   (citation omitted).  District courts have broad discretion in deciding whether or not to certify

15   a class.  *Id.* (citing *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1309 (9th Cir. 1977).  As

16   discussed below, the Court refrains at this time from ruling on Plaintiffs' Motion until the

17   parties have had the opportunity to conduct discovery relating to the proposed class.

18   **A.      Rule 23 Factors**

19   To obtain class certification, Plaintiffs must first satisfy the numerosity, commonality,

20   typicality, and adequacy of representation requirements of Rule 23(a).  *Walters v. Reno*, 145

21   F.3d 1032, 1045 (9th Cir. 1998).  "These requirements effectively 'limit the class claims to

22   those fairly encompassed by the named plaintiff's claims'" by ensuring that the named

23   plaintiffs have suffered the same injury and possess the same interest as the other class

24   members.  *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 156 (1982).  Plaintiffs must then

25   Page 43 of  48

1    demonstrate that their claims fall under one of the categories listed in Rule 23(b).  Because

2    Plaintiffs seek class certification under Rule 23(b)(2), they must demonstrate Defendants

3    have "acted or refused to act on grounds generally applicable to the class, thereby making

4    appropriate final injunctive relief or corresponding declaratory relief with respect to the class

5    as a whole."  Fed. R. Civ. P. 23(b)(2).  "Before certifying a class, the trial court must conduct

6    a 'rigorous analysis' to determine whether the party seeking certification has met the

7    prerequisites of Rule 23.  *Zinser*, 253 F.3d at 1186 (quoting *Valentino v. Carter-Wallace,*

8    *Inc.*, 97 F.3d 1227, 1233 (9th Cir. 1996)).  _____

9             **1.    Numerosity**

10            A proposed class meets the numerosity requirement if "the class is so numerous that

11    joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Plaintiffs satisfy the

12    numerosity requirement.  Rule 23 does not require that class actions involve any specific

13    number of putative class members.  *Jordan v. County of L.A.*, 669 F.2d 1311, 1319 (9th Cir.

14    1982).  Although Courts should consider many factors, the proposed class' absolute size is

15    the most important factor.  *Id.*  Plaintiffs allege that the proposed class numbers at least

16    4,000.  While some courts have held that the plaintiffs must present the actual number, most

17    courts have held that a reasonable estimate is sufficient.  *See, e.g., Zeidman v. J. Ray*

18    *McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir. 1981).  Defendants argue that

19    Plaintiffs have not cited to a reliable number.  However, Plaintiffs use the very numbers that

20    Defendants have determined are in the Clark County foster system.  Further, courts may rely

21    on common-sense assumptions to support findings of numerosity.  *Sherman v. Griepentrog*,

22    775 F. Supp. 1383, 1389 (D. Nev. 1991).  Further, if joinder of all class members and their

23    claims in one proceeding would be expensive, time-consuming, and logistically unfeasible,

24    then the class size is sufficiently numerous that joinder is impracticable.  The putative class is

25             Page 44 of  48

1    made up of thousands of children, many of which certainly cannot afford legal representation.

2    Accordingly, Plaintiffs have sufficiently alleged the class is so numerous that joinder of all

3    members is impracticable.

4              **B.    Commonality and Typicality**

5              The second requirement of Rule 23(a) is that "there are questions of law or fact

6    common to the class." Fed. R. Civ. P. 23(a)(2).  To satisfy the third requirement, Plaintiffs

7    must establish that the claims or defenses of the representative parties are typical of the

8    claims or defenses of the class.  Fed. R. Civ. P. 23(a)(3).  The Ninth Circuit has noted that the

9    commonality and typicality inquiry under Rule 23(a), and the availability of Rule 23(b)(2)

10   class certification, frequently overlap when plaintiffs seek class certification based on the

11   existence of a common policy or practice allegedly applicable to the class as a whole.

12   *Walters v. Reno*, 145 F.3d 1032, 1045-47 (9th Cir. 1998).

13             To determine commonality, Plaintiffs must demonstrate that at least one alleged

14   statutory constitutional violation applies to all Plaintiffs and putative class members.

15   Plaintiffs have opted to file their Motion for Certification before any discovery has been

16   conducted and before the Court decides any dispositive motions.  Courts have held that

17   generally it is better to conduct some pre-certification discovery and make rulings on early

18   dispositive motions before reaching class certification.  *See, e.g., Hickey v. Seattle*, No. C00-

19   1672 MJP 2006 U.S. Dist. LEXIS 36400, at *10 (June 5, 2006 W.D. Wash. 2006) (citing

20   Federal Judicial Ctr., Manual for Complex Litigation 253 (4th ed. 2004)).  In a case such as

21   this one, the Court must conduct a "rigorous analysis" and examine all claims as against all

22   parties to ensure that not only is there at least one common alleged statutory violation among

23   all class members, but that all the claims are typical of one another for the entire class.

24   However, as analyzed above, the Court dismisses many of Plaintiffs' claims.  Therefore,

25             Page 45 of  48

questions could potentially arise whether the class as a whole could demonstrate commonality and typicality after the Court dismisses Plaintiffs' claims.  In addition, because "motions for class certification are fact-specific, and therefore, the outcome of these motions will vary based on the specific facts of the case," a careful analysis of class certification issues may not be possible where the factual record is undeveloped.  *Stevens v. Harper*, 213 F.R.D. 358, 378 (E.D. Cal. Sep. 10 2003) (citing *McReynolds v. Sodexho Marriott Services, Inc.*, 208 F.R.D. 428, 442 (D.D.C. 2002)).

In this case, Plaintiffs controlled the timing of their certification motion by bringing the motion before the parties could develop the factual record through discovery, and before their claims had been refined by dispositive motions.  Plaintiffs may not obtain class certification based solely on allegations of system-wide violations, especially when they rely on such allegations not only to establish commonality and typicality under Rule 23(a), but also to demonstrate the propriety of class certification under Rule 23(b)(2).  Generalized policy and practice allegations do not substitute for the kind of specific legal and factual showings required by Rule 23.  *See J.B. v Valdez*, 186 F.3d 1280, 1289 (10th Cir. 1999) (refusing to "read an allegation of systematic failures as a moniker for meeting the class action requirements"); *Gen. Tel. Co. v.* Falcon, 457 U.S. 147, 158 (1982) (stating that a general allegation that the defendant has a practice of harmful conduct is insufficient under Rule 23).

In addition to their "systematic" theory of commonality, Plaintiffs allege that all putative class members suffer, or will suffer, specific violations of the Medicaid Act, the Adoption Assistance Act, and the Child Abuse Act.  However, as discussed above, Plaintiffs may not bring a private cause of action under all the statutory provisions cited.  Thus, the Court chooses to first decide the pending dispositive motions and then conduct the necessary

Page 46 of  48

"rigorous analysis" to determine if the remaining allegations provide commonality and typicality. After deciding the pending dispositive motions, it is very possible that commonality and typicality may no longer exist (assuming it does at this moment). Therefore, the Court defers ruling on class certification until the record is further developed and the parties have an opportunity to conduct discovery specific to the proposed class. *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1233 (9th Cir. 1996); *Stevens v. Harper*, 213 F.R.D. 358, 378 (E.D. Cal. Sep. 10 2003) (citing *McReynolds v. Sodexho Marriott Services, Inc.*, 208 F.R.D. 428, 442 (D.D.C. 2002)). Accordingly, the Court defers ruling on Plaintiffs' Motion at this time.

**CONCLUSION**

Pursuant to the above analysis, the Court rules on the pending motions as follows: As to all Defendants' Motions to Dismiss, the Court DENIES without prejudice all Motions as they relate to mootness and DENIES with prejudice all Motions as they relate to standing.

First, as to County Defendants' Motion to Dismiss, the Court GRANTS Defendants' request to dismiss Defendant DFS from this action and DENIES Defendants' request to dismiss the individually-named County Commissioners as analyzed above. The Court further GRANTS Defendants' Motion and dismisses the following claims in accordance with the above analysis: (1) Plaintiffs' claims under the Federal Adoption Assistance Act under 42 U.S.C. § 671(a)(10), 42 U.S.C. § 671(a)(22), 42 U.S.C. §§ 622(b)(10)(B)(ii) and 675(5)(A), and Plaintiffs' "All-Other-Rights claim"; (2) all Plaintiffs' claims under the Medicaid Act; (3) Plaintiffs' substantive due process claims under the U.S. Constitution for any Plaintiffs voluntarily in state custody; (4) Plaintiffs substantive due process claims under the U.S. Constitution as to all Plaintiffs based on a right not to be retained in custody longer than is necessary or to be placed in the least restrictive placement based on the foster child's needs;

(5) Plaintiffs' claim for state-created danger; and (6) counts seven through nine inasmuch as they allege liability for the manner in which Defendants carried out the alleged duties underlying the state claims.  The Court HEREBY DENIES County Defendants Motion to Dismiss with regards to Plaintiffs claims under the Federal Adoption Assistance Act under 42 U.S.C. §§ 671(a)(16), 675(1), and 675(5)(B)–the Right to Timely Written Case plans, and 42 U.S.C. §§ 675(5)(D) and 622(b)(10)(B)(ii)–the Right to Health and Educational Records Reviewed, and 42 U.S.C. § 675(5)(G)–the Right of Foster Parents or Preadoptive Parents to Notice of Hearings.  The Court further DENIES Defendants' Motion as it relates to (1) Plaintiffs' claim under the Child Abuse Prevention and Treatment Act pursuant to 42 U.S.C. § 5106a(b)(2)(A)(xiii), (2) Plaintiffs' substantive and procedural due process claims as analyzed above, (3) Plaintiffs' tenth cause of action, without prejudice to the filing of a motion for summary judgment, and (4) counts seven through nine inasmuch as they relate to allegations that Defendants failed to even initiate (not the manner in which the Defendants performed) the statutory duties as discussed in the Order above.  Further, the Court defers ruling on Defendants' abstention argument pursuant to *Younger*.

As to Governor Gibbons's Motion to Dismiss, the Court GRANTS Governor Gibbons's Motion to Dismiss and dismisses the Governor from this action for the reasons stated above in this Order.

As to the State Defendants, the Court GRANTS IN PART and DENIES IN PART State Defendants' Motion to Dismiss as discussed above.

DATED: May 9, 2007.

_____
ROBERT C. JONES
UNITED STATES DISTRICT JUDGE

Page 48 of  48